UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY STEVEN AKRIGHT,

       Plaintiff,

       v.                                      Case No. 05-C-821

DAVID GRAVES, MICHAEL T. SCHMIT,
JAMES DELANEY, NICHOLE ZIINO
MS. POWERS, and KEVIN HURST,

       Defendants.

## ORDER

The plaintiff, Jeffrey Steven Akright, who is proceeding *pro se,* is presently incarcerated at the Stanley Correctional Institution. On August 2, 2005, the plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 and paid the $250 filing fee. This action stems from plaintiff's confinement as a pretrial detainee at the Walworth County Jail ("WCJ"). By order of December 12, 2005, the court determined that the plaintiff's complaint survived screening under 28 U.S.C. §1915A because his allegations that he was forced to live in unsanitary conditions and was placed in a psychiatric isolation cell for disciplinary purposes stated valid claims under the due process clause of the Fourteenth Amendment. Presently before the court is defendants' "Motion for Summary Judgment" and plaintiff's "Motion to Oppose Defendants' Reply Brief as Untimely Submission Pursuant to Civil L.R. 56.2(c)." Both of these motions will be resolved herein.

## I.  MOTION TO OPPOSE DEFENDANTS' REPLY BRIEF AS UNTIMELY

The plaintiff has filed a motion asking the court to "den[y]" the defendants' reply brief as untimely.  Under Civil Local Rule 56.2(c), the movant is entitled to file a reply brief within 15 days of service of the response brief.  Plaintiff asserts that he served defendants, by mail, with a copy of his brief in opposition to defendants' motion for summary judgment on July 17, 2006, but defendants did not serve him with their reply brief until August 4, 2006.  Plaintiff contends the reply brief was tardy as it was served 18 days after service of the response brief.

Plaintiff's argument overlooks the procedural rules regarding the computation of time in connection with service.  In particular, Rule 6(e) of the Federal Rules of Civil Procedure, provides that "[w]henever a party must or may act within a prescribed period of time after service and service is made under Rule 5(b)(2(B), [service by mail] . . . , 3 days are added after the prescribed period would otherwise expire . . . ."  According to plaintiff, he served his response to defendants' motion for summary judgment on July 17, 2006, by placing it in the mail in accordance with Rule 5(b)(2)(B) of the Federal Rules of Civil Procedure.  This means that defendants reply brief was required to be served and filed no later than August 4, 2006.  *See* Fed. R. Civ. P. 6(e); and Civ. L.R. 56.2(c).  Hence, because defendants' reply brief was timely filed, plaintiff's motion to oppose defendants' reply brief will be denied.

## II.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

2

Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-71 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial - (1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law - is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56[c], except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party's response, by affidavit or otherwise provided in [Rule 56(c)], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## B. Relevant Undisputed Facts

The defendants included with their motion for summary judgment proposed findings of fact which they believe constitute the factual propositions upon which there is no genuine issue of material fact as required under Civil Local Rule 56.2(a). Defendants' proposed findings of fact cite to specific evidentiary materials in the record which support each proposed finding as required under

3

Civil Local Rule 56.2(a). The plaintiff filed objections to the proposed factual assertions but did not cite evidentiary material in support of those objections as he was required to do under Civil Local Rule 56.2(b)(1).[1] The defendants, in turn, filed a reply to the plaintiff's objections. *See* Civ. L.R. 56.2(c). In deciding this motion for summary judgment, the court will conclude that there is no genuine issue as to any proposed factual finding to which there is no proper response. *See* Civ. L.R. 56.2(e).

In view of the above, the court concludes that there is no genuine dispute concerning the following facts. Plaintiff is presently an inmate at the Stanley Correctional Institution. (Defendants' Proposed Findings of Fact [DPFF] ¶1.) Prior to his arrival at Stanley, he was incarcerated at the Dodge Correctional Institution and before that he was held, as a pretrial detainee, at the Walworth County Jail (WCJ) from June 23, 2004 to April 11, 2005. (*Id.*) Plaintiff's action, which arises out of his confinement at the WCJ, alleges that he was subjected to cruel and unusual punishment in violation of his Fourteenth Amendment rights as a result of defendants' conduct while housed in cell 678. (*Id.*) Specifically, he maintains that during the period between February 21, 2005, through March 22, 2005, he did not have access to a mirror or a table, his cell was not cleaned and contained feces and he was unnecessarily housed in a mental health cell for non-mental health reasons. (*Id.*)

Plaintiff has named as defendants the following WCJ officials: David Graves (Walworth County Sheriff), Michael Schmitz (jail administrator for WCJ), John Delaney (assistant jail administrator for WCJ), Kevin Hurst (certified corrections officer for WCJ), Tracey Powers (classifications officer for WCJ), and Nichole Ziino (classifications officer for WCJ). (DPFF ¶¶2-7).

---

[1] Plaintiff did not file his own additional proposed factual findings as permitted under Civil Local Rule 56.2(b)(2).

4

Defendant Graves did not manage plaintiff's incarceration. (DPFF ¶2.) Defendants Schmitz and Delaney did not personally interact with plaintiff on a daily basis. (DPFF ¶¶3-4.) Defendant Hurst received a couple of verbal complaints from plaintiff during plaintiff's incarceration and also served as the hearing officer for several due process hearings which were conducted as a result of major rule violations committed by plaintiff. (DPFF ¶5.) Plaintiff did not speak to defendant Powers at all while he was held in cell 678. (DPFF ¶6; Declaration of Emily O. Sullivan [Sullivan Decl.], Ex. A p. 90.) Plaintiff and defendant Ziino had in-person interactions with regard to the allegations of this lawsuit. (DPFF ¶7.)

Plaintiff was housed in cell 678 from February 21, 2005 through March 22, 2005. (DPFF ¶10.) Cell 678 is a cell that can be used for mental health detainees and contains a toilet/sink combination, a "hole-in-the-floor toilet," a bunk and mattress, bedding, a pillow and a window. (DPFF ¶11.) The walls of the cell are padded and the door is solid with a padded surface. (*Id.*) A dayroom, which is adjoined to cell 678 and two other cells, contains a shower, a table, a stool and has access to a radio. (DPFF ¶12.)

On or about February 21, 2005, plaintiff was housed in the Administrative Segregation ("AS") block of the WCJ where he was involved in an ongoing dispute with other inmates in AS. (DPFF ¶13.) AS classification is used for inmates that need to be separated from other inmates for health or safety concerns. (DPFF ¶14.) The disputes between plaintiff and the other inmates involved yelling, verbal threats and, on occasion, throwing items into each other's cells. (DPFF ¶15.) Plaintiff would "act back" in response to the constant yelling and other confrontations and had even thrown water into another inmate's cell. (*Id.*)

5

Plaintiff was considered a source of tension in almost every area he was housed. (DPFF ¶16.) As a result, plaintiff was transferred from AS to cell 678 on February 21, 2005. (DPFF ¶17.) Plaintiff was not transferred to cell 678 for mental health reasons. (*Id.*) Rather, he was transferred to cell 678 in order to decrease the level of confrontation in AS which would, in turn, increase the overall level of safety and security within WCJ. (*Id.*) After his transfer, his privileges remained largely the same and he was still considered to be in AS. (*Id.*) Because of the safety and security concerns raised by plaintiff's behavior, his transfer to cell 678 was considered proper under WCJ policy. (DPFF ¶18.)

A monthly classification committee meeting was held on February 22, 2005 where it was decided that plaintiff would remain in cell 678 until the next classification meeting. (DPFF ¶19.) Such meetings are conducted pursuant to WCJ policy. (*Id.*) Notes from this classification meeting state as follows:

> I think it is safe to say that Akright is the source of tension in almost every area he has been housed in: the pods, MS, AS, and DS. He just can't learn to keep quiet and keep his inappropriate comments to himself. As a result, the committee decided it was best for everyone else, to move him to MD on AS status. That means he is only in MD because he cannot get along with others in AS and even though inmates are not allowed out at the same time, problems still arise because of the set up in AS. They are yelling, threatening to throw urine in cells, and generally making super pod unbearable to work in. As a courtesy to staff and other inmates, Akright will be housed by himself with all of AS rules applying to him except for rotation of house out. He will get one hour per shift at meals only. Because of medical reasons however, he is not allowed in the gym. Other than that, all other rules apply: radio, phone, bin acces

(DPFF ¶20.) Plaintiff was informed that he remained on AS status even though he was confined to cell 678. (DPFF ¶21.)

6

After plaintiff was transferred to cell 678, he was responsible for cleaning the cell.[2]  (DPFF 22.)  Plaintiff first received cleaning supplies on February 25, 2005 – four days after his transfer to cell 678.  (Akright Decl. ¶9; DPFF ¶23.)  Thereafter, plaintiff generally received cleaning supplies during his lunch hour.  (DPFF ¶23.)  Typically, plaintiff had access to the dayroom during mealtimes. (DPFF ¶24.)

There is a grievance procedure at WCJ pursuant to which an inmate must fill out a three-part form which allows them to specify whether they are making a "request," "complaint" or an "appeal." (DPFF ¶25.)  The grievance procedure allows inmates to make complaints or grievances about an officer's actions, the facilities or services by submitting a complaint or grievance to the shift supervisor for review.  (DPFF ¶26.)  The shift supervisor will then take appropriate action and will respond in writing to the complaint.  (*Id.*)  In order to appeal the decision of a supervisor, the "appeal" box should be checked on the grievance form.  (*Id.*)

Plaintiff contends that he "knew nothing about the grievance procedure or that he had to appeal any of the administrations [sic] answers."  (Akright Decl. ¶10.)  However, during plaintiff's confinement in cell 678, he wrote five grievances concerning the conditions of his cell.  (Akright Decl. ¶10; DPFF ¶27.)  The first grievance was written on February 23, 2005, and concerns the initial discussion defendant Ziino had with plaintiff regarding his transfer to cell 678.  (DPFF ¶28.) Defendant Delaney responded to the grievance and later determined that defendant Ziino's handling

---

[2] The parties dispute the condition of cell 678 when plaintiff was first placed in it.  The defendants contend that prior to plaintiff's transfer, the cell was cleaned.  (DPFF ¶22.)  However, in his affidavit, plaintiff states that the cell had not been cleaned prior to his transfer and the cell was "covered with human feces."  (Akright Declaration in Opposition ["Akright Decl."] ¶7.)

7

of the transfer was appropriate given the continuing altercations between the plaintiff and the other inmates in the AS section of the jail. (*Id.*)

The second grievance was a complaint written on February 27, 2005, in which plaintiff took issue with the fact that he had not been able to use the dayroom during meal times and that he did not have enough time to use his cleaning supplies. Sergeant Troemel's response to the grievance states that he "apologize[d] for the oversight" concerning the use of the dayroom and that he would "speak with staff about getting [plaintiff's] supplies to [him] sooner." (DPFF ¶29; James Delaney Declaration ["Delaney Decl."] ¶12, Ex. B.)

The third grievance was a complaint dated March 2, 2005, pertaining to plaintiff's confinement in cell 678, the lack of a mirror in the cell and his desire to use the gym facilities. Defendant Delaney's response to the complaint informed plaintiff that he would remain in cell 678 until the next classification meeting and that his medical limitations, not his classification, prevented him from using the gym. (DPFF ¶30; Delaney Decl. ¶13, Ex. C.)

The fourth grievance was a complaint dated March 4, 2005, concerning the lack of a mirror in cell 678. (DPFF ¶31.) Defendant Delaney responded to the complaint by notifying plaintiff that he would look into the matter. (Delaney Decl. ¶14, Ex. D.) Later, defendant Delaney determined that access to a mirror is not a constitutionally protected right. (*Id.*)

The fifth grievance submitted by plaintiff was a complaint dated March 7, 2005, relating to plaintiff's confinement in cell 678 and its location within the mental health section of the jail facility. (DPFF ¶32.) Defendant Delaney responded to the complaint and informed plaintiff that he was not in cell 678 for psychiatric segregation and that he continued to remain on "Administrative Status." (*Id.*)

Plaintiff did not appeal any of the decisions he received in response to the five complaints he filed in cell 678.  (DPFF 34.)  At the classification meeting held on March 22, 2005, the committee decided to transfer plaintiff from cell 678 to cell 257 in the male classification pod because he had not recently received any write-ups.  (DPFF ¶35.)

## C.  Analysis

Defendants argue that they are entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. §1997e.[3]  The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies is a condition precedent to suit.  *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)).  Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving.  *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  The duty to exhaust one's administrative remedies applies "regardless of the relief offered through administrative procedures."  *Booth v. Churner*, 532 U.S. 731, 741 (2001) (footnote omitted); *see also Perez*, 182 F.3d at 538.  Further, there is no futility exception to the exhaustion requirement.  *See Booth*, 532 U.S. at 741 n.6; *Perez*, 182 F.3d at 537.

---

[3] Defendants also argue that they are entitled to summary judgment under three other theories: (1) plaintiff could not sustain his official capacity claims against them; (2) plaintiff could not establish that his Fourteenth Amendment rights were violated; and (3) defendants were entitled to qualified immunity.  Because the court finds that plaintiff did not exhaust his administrative remedies, it need not decide these alternative arguments.

It is undisputed that there is a grievance procedure at WCJ pursuant to which inmates fill out a form indicating whether they are making a request, a complaint or an appeal. This grievance procedure allows an inmate to challenge an officer's actions, the facilities or services provided by submitting a complaint or grievance to the shift supervisor for review who will then take appropriate action and respond in writing. An inmate may appeal a decision of a supervisor by marking the "appeal" box on the form and stating the grounds for his appeal.

Five grievances were filed by plaintiff while he was in cell 678 concerning his confinement in that cell. None of these grievances concerned the cleanliness of cell 678 upon his placement in that cell. Further, plaintiff admits that he did not appeal any of the five decisions that were rendered with respect to the grievances filed.

In his opposition to the defendants' motion for summary judgment, plaintiff states in his sworn declaration that he "knew nothing about the grievance procedure or that [he] had to appeal any of the administrations [sic] answers." (Akright Decl. ¶10.) Under some circumstances, "a correctional institution's failure to provide an inmate with sufficient information about the available grievance procedure may excuse his failure to exhaust administrative remedies." *Arnold v. Goetz*, 245 F. Supp. 2d 527, 536 (S.D.N.Y. 2003) (citing *Hall v. Sheahan*, 2001 WL 111019 (N.D. Ill Feb. 2, 2001)). However, in this case, plaintiff's self-serving assertion that he did not know that he had to appeal is not supported by the record and therefore does not create a genuine issue preventing summary judgment. *See Albiero v. City of Kankakee*, 246 F.3d 927. 933 (7th Cir. 2001). This is so because the documentary evidence in the record shows that during plaintiff's ten month confinement at the WCJ, he filed numerous grievances, some of which were appeals. (Defendants' Rebuttal to Plaintiff's Response to Defendants' Proposed Findings of Fact ["Rebuttal"] ¶¶25, 26, 34; Michael

10

Schmitz declaration ["Schmitz Decl."] ¶6, Ex. A.)  Furthermore, a number of these filings pre-date

plaintiff's placement in cell 678.  One of the appeals, which was written by plaintiff before he was

transferred to cell 678, reveals that plaintiff understood the grievance procedure and that an appeal

was necessary to exhaust his claim.  Specifically, plaintiff stated in the form "I have wrote a request

. . . I wrote a complaint . . . now I'm writing my appeal . . . This should exhaust all possible

remedies." (Schmitz Decl. Ex. A.)  This appeal clearly establishes that plaintiff was, in fact, familiar

with the jail's grievance procedure and the steps available to him in order to exhaust his remedies

prior to his placement in cell 678.

Because plaintiff failed to exhaust the claims in this lawsuit in accordance with 42 U.S.C.

§1997e(a), defendants are entitled to dismissal of this action, without prejudice.  *See Ford v.

Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals under §1997e(a) should be without

prejudice.") (emphasis in original).

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's "Motion to Oppose

Defendants' Reply Brief as Untimely" be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' "Motion for Summary Judgment"

(Docket #31) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**, without

prejudice;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 16th day of October 2006, at Milwaukee, Wisconsin.


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge